IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 14-cv-01956-LTB

MELISSA VIALPANDO,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

_____

ORDER
_____

Plaintiff Melissa Vialpando appeals Defendant's (the "Commissioner") final administrative decision denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g). Oral argument would not materially assist in the determination of this appeal. After consideration of the briefs and the record, I affirm the Commissioner's decision in part, reverse it in part, and remand the case for further proceedings consistent with this Order.

**I. Statement of the Case**

A hearing on Plaintiff's claim was held before an administrative law judge (the "ALJ") on January 9, 2013. On January 24, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's January 24, 2013 decision the Commissioner's final decision for purposes of my review. Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

## II. Statement of Facts

### A. Background

Plaintiff was born on December 22, 1971, making her 39 years old at the time of her alleged disability onset date of February 1, 2011. Administrative Record ("AR") 20. Plaintiff completed 11th grade and has worked in the past as a caregiver, grocery bagger, certified nursing assistant, prison guard, and housekeeper in the retail industry. AR 197. Plaintiff alleged disability due to bipolar II disorder, antisocial personality disorder, and borderline personality disorder. AR 196.

### B. Relevant Medical Evidence

In February of 2011, Plaintiff was first seen by Janna Tranter, a licensed professional counselor. Ms. Tranter diagnosed Plaintiff with bipolar II disorder, borderline personality disorder, and antisocial personality disorder and assigned her a GAF score of 21-30. AR 273. Ms. Tranter had regular contact with Plaintiff over the next few months and gave Plaintiff a progress rating of "some progress" after each contact. AR 276-77. In January of 2012, Plaintiff began taking medication for depression and indicated that she planned to start taking medication for her bipolar disorder when she could afford it. AR 278. By April of 2012, Plaintiff had stopped taking her medication for depression, and Ms. Tranter noted that she was "much more cranky while off of it." AR 311. A few weeks later, Ms. Tranter noted that Plaintiff was "doing well" and would come for appointments on "an as needed basis." *Id.*

On April 4, 2012, Richard B. Madsen, PH.D., performed a psychological evaluation of Plaintiff in connection with her application for disability benefits. AR 279-82. At the time of Dr. Madsen's evaluation, Plaintiff was taking the prescribed medications Topamax, Weelbutrin, and Depakote. AR 281. Upon examination, Dr. Madsen found that Plaintiff was oriented to

person, time, and place and had a blunt affect; logical and relevant thought content; impaired short term auditory memory and ability to do arithmetic functions in her head; a below average to borderline level of intellectual functioning; and adequate persistence and pace.  AR 281-82. Dr. Madsen diagnosed Plaintiff with bipolar disorder type II; posttraumatic stress disorder; panic disorder; and personality disorder and assessed Plaintiff with a GAF score of 60.  AR 282.  Dr. Madsen concluded that Plaintiff's ability to do work-related activities was impaired but did not specify the nature or extent of her impairments.  *Id.*

On April 18, 2012, Gayle Frommelt, Ph.D., a non-examining state agency physician, completed a mental RFC assessment for Plaintiff based on her review of the records including those from Dr. Madsen's evaluation.  AR 56-8.  Dr. Frommelt assessed Plaintiff with moderate limitations in her ability to

> understand and remember detailed instructions;
>
> maintain attention and concentration for extended periods;
>
> perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
>
> work in coordination with or in proximity to others without being distracted by them;
>
> make simple work-related decisions;
>
> compete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
>
> interact appropriately with the general public;
>
> ask simple questions or request assistance;
>
> accept instructions and respond appropriately to criticism from supervisors;

> get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
>
> respond appropriately to changes in the work setting; and
>
> set realistic goals or make plans independently of others.

*Id.* Dr. Frommelt further opined that Plaintiff had the ability "to follow simple instructions, sustain ordinary routines, and make simple decisions" and to "manage social interactions that are not frequent or prolonged" but "should minimize contact with general public." AR 58.

On May 2, 2012, Ms. Tranter competed a mental RFC evaluation for Plaintiff in which she indicated that Plaintiff suffered from bipolar II; borderline personality disorder; and antisocial personality disorder. AR 299-301. Ms. Tranter assessed Plaintiff with marked limitations in her ability to

> perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
>
> sustain an ordinary routine without special supervision;
>
> travel to unfamiliar places or use public transportation; and
>
> set realistic goals or make plans independently of others

AR 300. Ms. Tranter assessed Plaintiff with extreme limitations in her ability to

> work in coordination with or in proximity to others without being distracted by them;
>
> complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods;
>
> interact appropriately with the general public;
>
> accept instructions and respond appropriately to criticism from supervisors;
>
> get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and

4

> maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness

*Id.*  Ms. Tranter assessed Plaintiff with moderate limitations in her ability to perform several other work-related activities and opined that Plaintiff was not mentally capable of working any job 8 hours per day, 5 days per week and would be off task 80% of the time. AR 300-01.  At an appointment several days later, Ms. Tranter noted that Plaintiff appeared to be more emotionally stable and was going to start up again with her medication for depression. AR 311.      In November of 2012, Plaintiff was referred to Analice F. Hoffenberg, MD MSPH, for mental health screening and recommendations for therapy.  AR 317.  Dr. Hoffenberg saw Plaintiff on three occasions via "telemedicine evaluation" and diagnosed her with antisocial personality disorder, bipolar disorder II, and cocaine dependence. AR 313-20.  Dr. Hoffenberg recommended specialized counseling "focusing on emotional regulation and interpersonal skills, as well as drug use relapse prevention" and that Plaintiff start taking Carbamazepine for mood stabilization and Zoloft for depression.  AR 314, 316 & 319-20.  However, Plaintiff was not taking any medications as of her last appointment with Dr. Hoffenberg on January 7, 2013.  AR 313.

On January 7, 2013, Dr. Hoffenberg competed a mental RFC evaluation for Plaintiff in which she indicated that Plaintiff suffered from bipolar disorder II; antisocial personality disorder; and cocaine dependence.  AR 299-301.  Dr. Hoffenberg assessed Plaintiff with marked limitations in her ability to

> carry out detailed instructions;
>
> maintain attention and concentration for extended periods;
>
> ask simple questions or request assistance;

5

>respond appropriately to changes in the work setting; and
>
>travel in unfamiliar places or use public transportation

AR 322. Dr. Hoffenberg assessed Plaintiff with extreme limitations in her ability to

>perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
>
>sustain an ordinary routine without special supervision;
>
>work in coordination with or in proximity to others without being distracted by them;
>
>complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods;
>
>interact appropriately with the general public;
>
>accept instructions and respond appropriately to criticism from supervisors;
>
>get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
>
>maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and
>
>set realistic goals or make plans independently of others

*Id.* Dr. Hoffenberg assessed Plaintiff with moderate limitations in her ability to perform other work-related activities and opined that Plaintiff was "not currently" mentally capable of working any job 8 hours per day, 5 days per week and would be off task 100% of the time. AR 321-23.

### C. Plaintiff's Disability Hearing

At the January 9, 2013 hearing, Plaintiff testified that she was prone to outbursts where she would verbally and physically snap at people over any little thing; would begin tasks but forget to complete them; couldn't concentrate on television shows or comprehend things that she

read; and was unable to understand directions or instructions. AR 35-6. Plaintiff testified that her outbursts and inability to be around people prevented her from working while she was incarcerated and from completing her GED courses. AR 32-3.

The vocational expert ("VE") testified that Plaintiff indicated that she had worked in the past as a certified nursing assistant; caregiver; grocery bagger; prison guard; and housekeeper/janitor in the retail sector. AR 38. The ALJ asked the VE if a person of the same age, education, and vocational experience as Plaintiff who could perform medium unskilled work with decreased interpersonal contact for coworkers and supervisors and minimal to no contact with the general public could perform Plaintiff's past, relevant work. AR 38-9. The VE responded no. AR 39. The ALJ then asked the VE if there were jobs existing in the national economy that such a person could perform. *Id.* The VE responded that such an individual could work as a floor waxer, cleaner II, and automobile washer. *Id.*

On follow up questioning, Plaintiff's attorney asked the VE if a person with a marked impairment in the ability to accept instructions and respond appropriately to criticism form supervisors could perform any job. *Id.* The VE responded no. *Id.* Plaintiff's attorney next asked the VE if a person with a marked impairment in the ability to perform activities within a schedule, maintain regular attendance, and to be punctual could perfrom any job. AR 39-40. Again, the VE responded no. AR 40. Finally, Plaintiff's attorney asked the VE if any jobs would be available to a person with a marked impairment in the ability to perform a normal workday without interruptions from psychologically-based symptoms. *Id.* Once again, the VE responded no. *Id.*

**D. The ALJ's Decision**

In his ruling, the ALJ applied the five-step sequential process outlined in 20 C.F.R. §§ 404.1520(a). At the first step of the sequential process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of February 1, 20011. AR 15. At the second step, the ALJ determined that Plaintiff had severe impairments of (1) bipolar disorder I; (2) antisocial personality disorder; (3) borderline personality disorder; and (4) posttraumatic stress disorder ("PTSD"). *Id.* At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16.

The ALJ next determined that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c) but was limited to unskilled work with minimal to no contact with the general public and "decreased interpersonal contact with co-workers and supervisors." AR 17. Based on the assessed RFC, the ALJ concluded that Plaintiff was unable to perform any past relevant work but could work at other jobs existing in significant numbers in the national economy such as floor waxer, cleaner II, and auto washer. AR 19-21. Thus, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Act from February 1, 2011through the date of his decision. AR 21.

### III. Standard of Review

In reviewing the Commissioner's decision, I must determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98

(10th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamilton, supra,* 961 F.2d at 1498. I "may neither reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge." *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995).

## IV.  Analysis

On appeal, Plaintiff argues that the ALJ erred (1) by failing to properly weigh conflicting medical opinions; (2) by failing to include all limitations in Dr. Frommelt's assessment of Plaintiff's mental RFC; and (3) by failing to properly account for Plaintiff's assessed moderate difficulties in concentration.

### A.  The ALJ's Weighing of the Medical Opinions

In his decision, the ALJ indicated that he was giving "some weight" to the opinions of Dr. Madsen and Dr. Frommelt and "less weight" to the check-form opinions of Ms. Tranter and Dr. Hoffenberg. AR 18. In discussing the weight assigned to the opinions of Dr. Madsen and Dr. Frommelt, the ALJ cited the "additional explanation" section of Dr. Frommelt's mental RFC assessment where she noted, among other things, that Plaintiff was on psychiatric medications but not in psychiatric treatment and the findings from her consultative examination with Dr. Mardsen. AR 18. With respect to his conclusion that Ms. Tranter and Dr. Hoffenberg's mental RFC evaluations for Plaintiff were entitled to "less weight," the ALJ noted (1) that an individual with the limitations assigned to Plaintiff would normally expect to be institutionalized yet there was no recommendation for this type of treatment anywhere in the record; (2) that Plaintiff was compliant with her medications at the time these opinions were issued which should have improved her level of mental functioning per her medical history and recommendations for

9

treatment; (3) that Dr. Hoffenberg had only been seeing Plaintiff once a month for less than two months at the time she issued her opinions; and (4) that two other GAF score assessments for Plaintiff that were significantly higher that the 21 to 30 range assessed by Ms. Tranter.  AR 18-9.

Plaintiff first argues that the ALJ erred by failing to determine whether Dr. Hoffenberg qualified as a treating physician and, if so, whether her opinions were entitled to controlling weight.  I disagree.  Although the opinions of a claimants's treating physician may be entitled to controlling weight, these opinions may be given less weight based on a number of factors including the length of the treatment relationship and the frequency of examination.  20 C.F.R. § 404.1527(c)(2) -(6).  Regardless of whether Dr. Hoffenberg qualifies as a treating physician, it is clear that the ALJ did not give her opinions regarding Plaintiff's mental RFC controlling weight for legally sufficient and factually supported reasons including the short duration of the treatment relationship; the limited number of appointments; and inconsistency with other evidence in the record.  I therefore conclude that the ALJ's failure to specifically address whether Dr. Hoffenberg qualified as a treating physician and whether her opinions were entitled to controlling weight does not constitute reversible error.

Plaintiff next argues that the ALJ erred by failing to attach more weight to the opinions of Dr. Hoffenberg that to those of Dr. Frommelt because Dr. Hoffenberg actually examined Plaintiff while Dr. Frommelt did not.  I disagree.  While a treating or examining physician may often be in the best position to opine about a claimant's limitations, it does not follow that the opinions of these sources are entitled to more weight than those of a non-examining physician in all cases.  *See* Social Security Ruling 96-2p, 1996 WL 374188 at *4 (*"In many cases,* a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it

does not meet the test for controlling weight.'). It is also noteworthy that the ALJ relied, in part, on Dr. Hoffenberg's own treatment records which do not include any recommendation that Plaintiff be institutionalized or receive a significant level of treatment in attaching "less weight" to her mental RFC evaluation for Plaintiff. AR 18. Again, the ALJ articulated legally sufficient and factually supported reasons for why he attached "less weight" to Dr. Hoffenberg's mental RFC evaluation for Plaintiff, and the fact that Dr. Hoffenberg performed three "telemedicine evaluations" of Plaintiff does not automatically entitle her opinions to more weight than those of Dr. Frommelt.

Plaintiff also takes issue with some of the other reasons cited by the ALJ for discounting or rejecting Dr. Hoffenberg and Ms. Tranter's mental RFC evaluations for Plaintiff. First, Plaintiff argues that the ALJ should not have rejected these opinions based on the fact that they were rendered using check-box forms. A careful reading of the ALJ's opinion, however, does not support Plaintiff's assertion that it was that it was the nature of the form used that led the ALJ to attach less weight to these opinions. AR 18-9.

Next, Plaintiff argues that it was speculation on the part of the ALJ that Plaintiff would be institutionalized if Dr. Hoffenberg and Ms. Tranter's mental RFC evaluations were accurate. While the ALJ did not cite anything to support this conclusion, it is readily apparent that Plaintiff was not receiving the level of care that would be expected if she had extreme or marked limitations in areas such as sustaining an ordinary routine without special supervision; interacting with the general public; and maintaining socially appropriate behavior. AR 300 & 322. The fact that Ms. Tranter did not even think Plaintiff required regular appointments less than one month prior to her completion of the mental RFC evaluation (AR 311) illustrates the

inconsistency between the treatment prescribed for Plaintiff and the degree of limitations assessed for her by Ms. Tranter and Dr. Hoffenberg. I therefore find no error with the ALJ's overall finding that Plaintiff's course of treatment was inconsistent with the level of severity reflected in Ms. Tranter and Dr. Hoffenberg's mental RFC evaluations of Plaintiff.

Finally, Plaintiff argues that the ALJ erred in his analysis of Plaintiff's compliance/non-compliance with medication. However, The ALJ's was not using any non-compliance by Plaintiff with taking prescribed medications to support his finding that she was not credible or that she was not disabled; rather, the ALJ was noting differences in Plaintiff's level of mental functioning when she is on prescribed medications and citing this difference as but one factor to support his conclusion that the Dr. Hoffenberg and Ms. Tranter's opinions of Plaintiff's mental RFC were entitled to "less weight." Under these circumstances, I find no error in the ALJ's analysis of Plaintiff's history with psychiatric medications.

Plaintiff also argues that the ALJ failed to adequately explain why he gave more weight to the opinions of Dr. Frommelt than to those of Dr. Hoffenberg or Ms. Tranter. I disagree. While the ALJ may not have explicitly stated why he was giving more weight to Dr. Frommelt's assessment of Plaintiff's mental RFC that to those of Ms. Tranter and Dr. Hoffenberg, it can reasonably be inferred that some of the same reasons that the ALJ gave for discounting the latter's opinions supported those of Dr. Frommelt. Specifically, Dr. Frommelt's opinions were more consistent with the level of treatment recommended by Ms. Tranter and Dr. Hoffenberg and, by relying on Dr. Madsen's consultative examination, took into account Plaintiff's level of functioning when on psychiatric medications. Thus, the ALJ did not give more weight to Dr. Frommelt's mental RFC evaluation of Plaintiff solely because there was evidence in the record

undermining Ms. Tranter and Dr. Hoffenberg's evaluations but rather because some of this same evidence supported Dr. Frommelt's opinions.

Finally, Plaintiff argues that the ALJ erred in giving Dr. Madsen's opinion more weight that Ms. Tranter and Dr. Hoffenberg's mental RFC evaluations. The analysis set forth above regarding the greater weight given to Dr. Frommelt's opinions is also applicable to Dr. Madsen's opinions. In addition, the GAF score of 60 that Dr. Madsen assessed for Plaintiff was more in line with the GAF score assessed for her a few months earlier in connection with her probation for selling illegal drugs. AR 288.

In sum then, I conclude that the ALJ applied the correct legal standards in assigning weight to the medical opinions in this case and that the assigned weights are supported by substantial evidence in the record.

## B. Dr. Frommelt's Assessment of Plaintiff's Mental RFC

Plaintiff argues that the ALJ erred by giving "some weight' to Dr. Frommelt's opinion yet failing to incorporate Dr. Frommelt's findings that Plaintiff was limited to simple instructions; was moderately impaired in her ability to perform activities within a schedule, maintain regular attendance, and complete a normal workday without interruption; and was limited to social interactions that are not frequent or prolonged. I agree in part.

First, I consider whether the ALJ's RFC assessment did in fact fail to incorporate all of the findings by Dr. Frommelt cited by Plaintiff. The Commissioner argues that by limiting Plaintiff to unskilled work with decreased interpersonal contact with co-workers and supervisors, the ALJ effectively incorporated Dr. Frommelt's opinions that Plaintiff was limited to simple instructions and social interactions that are not frequent or prolonged. Since the basic demands

of unskilled work include the ability to understand, carry out, and remember simple instructions, SSR 85-15, 1985 WL 56857 at *4, I agree that Dr. Frommelt's opinion that Plaintiff was limited to simple instructions is encompassed within the RFC that the ALJ assessed for Plaintiff.

With respect to Dr. Frommelt's opinion that Plaintiff was limited to social interactions that are not frequent or prolonged, the language used by the ALJ does not mirror that of Dr. Frommmelt.  The RFC that the ALJ assessed for Plaintiff therefore arguably does not encompass Dr. Frommelt's opinion regarding the acceptable level of social interaction for Plaintiff, and I therefore include this opinion in my analysis of whether the ALJ erred by not incorporating the certain opinions of Dr. Frommelt.

The Commissioner argues that pursuant to the Program Operations Manual System ("POMS"), the ALJ was not required to incorporate any of the limitations set forth in the first part of the form Dr. Frommelt completed for Plaintiff's mental RFC assessment into his RFC assessment.  Specifically, POMS DI 24510.060 provides that the findings set forth in Section I of a particular mental RFC assessment form are not part of the assessment; rather, the mental RFC assessment is limited to the narrative explanation set forth in Section III of that form.  Although Plaintiff argues that Dr. Frommelt used a different form than that referenced in POMS DI 24510.060, the form used by Dr. Frommelt states on its face that the mental RFC assessment is recorded in the form's narrative sections.  AR 56.  Thus, the Commissioner's argument that the ALJ was not required to incorporate any impairments not set forth in narrative fashion is equally applicable to the specific form utilized by Dr. Frommelt.

In response to each request for a narrative explanation on the form that Dr. Frommelt used for her mental RFC assessment for  Plaintiff, Dr. Frommelt responded "[s]ee below."  AR

56-7. Then, in the "Additional Explanation" section at the bottom of the form, Dr. Frommelt stated that

> This woman retains the ability to follow simple instructions, sustain ordinary routines and make simple decisions. She can manage social interactions that are not frequent or prolonged. She should minimize contact with general public.

AR 58. Thus, Dr. Frommelt did not expressly incorporate her finding that Plaintiff was moderately impaired in her ability to perform activities within a schedule, maintain regular attendance, and complete a normal workday without interruption into Plaintiff's mental RFC. It does not follow, however, that the ALJ could therefore disregard these findings.

Regardless of whether they were included in her actual mental RFC assessment for Plaintiff, Dr. Frommelt's opinion that Plaintiff was moderately impaired in her ability to perform activities within a schedule, maintain regular attendance, and complete a normal workday without interruption was still an uncontroverted and probative medical opinion that had to be discussed by the ALJ. *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996). The need for such discussion is especially imperative in this case since the ALJ rejected other medical evidence in the record that assessed Plaintiff with more severe impairments in this same area. AR 300 & 322.

I therefore conclude that his case must be remanded to the ALJ so that he can explain why he rejected Dr. Frommelt's opinion that Plaintiff was moderately impaired in her ability to perform activities within a schedule, maintain regular attendance, and complete a normal workday without interruption as evidenced by his failure to incorporate this limitation into the RFC that he assessed for Plaintiff. On remand, the ALJ must also explain the discrepancy between Dr. Frommelt's opinion that Plaintiff can manage social interactions that are not

frequent or prolonged and his conclusion that Plaintiff was capable of "decreased interpersonal contact with co-workers and supervisors." If further analysis of these issues leads to any modification in the RFC that the ALJ assessed for Plaintiff, the ALJ shall also re-evaluate his conclusion that Plaintiff was capable of working at other jobs existing in significant numbers in the national economy.

**C. The ALJ's Treatment of Plaintiff's Impaired Ability to Concentrate**

At step three of the sequential process, the ALJ considered the 'paragraph B" criteria and found that Plaintiff had moderate difficulties with regard to concentration, persistence, and pace. AR 16. The ALJ further stated that his RFC assessment that followed reflected the degree of limitation he found in the "paragraph B" mental functional analysis. AR 17. Plaintiff argues that the ALJ erred by failing to account for Plaintiff's concentration impairment in his assessment of Plaintiff's RFC. I agree, and further consideration of this issue is necessary on remand.

I first address the Commissioner's argument that the ALJ adequately accounted for Plaintiff's moderate impairment in concentration by limiting her to unskilled work. The parties cite conflicting Tenth Circuit authority on this issue. *Compare Chapo v. Astrue,* 682 F.3d 1285, 1290 n. 3 (10th Cir. 2012) (unskilled jobs identified by VE accounted or issues of skill transfer, not impairment of mental functions which are not skills but, rather, general prerequisites for most work at any level) *with Wendelin v. Astrue,* 366 Fed. App'x. 899, 904 (10th Cir. 2010) (ALJ adequately accounted for claimant's limitation on concentration by confirming that all jobs identified by the VE fell in the class of unskilled work). Under the circumstances of this case, where the ALJ essentially rejected medical opinions that Plaintiff suffered from more severe

16

impairments, I am persuaded that the ALJ should have taken particular care to ensure that the limitations he did assess for Plaintiff were fully taken into account.  I therefore conclude that the ALJ's assessment that Plaintiff was limited to unskilled work failed to account for the moderate impairment that he found in Plaintiff's ability to concentrate.  *See also Jaramillo v. Colvin,* 576 Fed. App'x 870, 876 (10th Cir. 2014) (none of the basic mental abilities of unskilled work described in SSR 85-15 captured Plaintiff's moderate limitation in her ability to concentrate).

I next consider whether the ALJ was required to include the moderate impairment in concentration that he found Plaintiff had at step 3 of the sequential process in the RFC that he assessed for her.  Again, the parties cite conflicting Tenth Circuit authority on this issue.  *Compare Crowder v. Colvin,* 561 Fed. App'x 740, 745 (10th Cir. 2014) ("... the ALJ's failure to address concentration, persistence, or pace in his RFC analysis is puzzling given that at step three, he assessed [Plaintiff] with moderate limitations in this area.") *with Bales v. Colvin,* 576 Fed. App'x 792, 798 (10th Cir.  2014) ("... we conclude that the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case.").  While an ALJ may not be required to incorporate a finding of moderate limitations at step three into the RFC assessment in all cases, I conclude that the circumstances of this case as previously set forth in this Order mandate that the ALJ at least explain why he chose not to incorporate the moderate difficulties he found Plaintiff had with regard to concentration into his assessment of her RFC.  Accordingly, on remand, the ALJ must address what effect, if any, Plaintiff's moderate difficulties in her ability to concentrate has on her ability to perform work-related functions and activities.

## V. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED IN PART and REVERSED IN PART. The case is remanded for further proceedings consistent with this Order.

Dated: December  15 , 2015 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE
